■ The People of the State of New York, Respondent, v Jamar Allah, Appellant. The People of the State of New York, Appellant, v Jamar Allah, Respondent.—Order, Supreme Court, Bronx County (Harold Silverman, J.), entered January 16, 1985, which set aside the jury verdict finding defendant guilty of murder in the second degree, reversed, on the law, the verdict reinstated and the matter remanded for sentencing.

Judgment, Supreme Court, Bronx County (Harold Silverman, J.), rendered November 13-14, 1984, which convicted defendant of attempted murder in the second degree, robbery in the first degree and criminal possession of a weapon in the second degree and sentenced him as a persistent felony offender to two concurrent 25-year-to-life prison terms and lesser terms, unanimously affirmed.

Defendant's conviction by the jury of murder in the second degree, and lesser charges, arises from an incident in the early morning hours of June 19, 1982 when defendant and

two companions engaged in a dispute with Larry "Messiah" Scott. Defendant and Scott were members of the "Five-Percenter" sect, and the dispute centered around Scott's assertions that he was "God" and his lack of attendance at the sect's meetings. Scott was shot and killed by one of defendant's companions, while defendant shot and robbed one Edward Greene, a friend of Scott's who had attempted to intervene on his behalf as the dispute escalated. In response to defendant's CPL 330.30 (1) motion, Justice Silverman set aside defendant's conviction for the murder of Scott on the ground that defendant did not share the intent of his companion to kill Scott.

Viewing the evidence in the light most favorable to the prosecution, as we must when reviewing the legal sufficiency of the evidence (see, People v Contes, 60 NY2d 620), it is clear that the People proved that defendant shared the intent of his unapprehended associate to kill Scott. The evidence showed that the incident began on a street corner near the "Five-Percenters'" religious school, where the defendant and his companions were engaged in a heated argument with Scott concerning their disapproval of Scott's religious beliefs and conduct. Scott, who was unarmed, offered to settle the debate by fighting. At this point, one of defendant's companions pulled out a gun which had previously been hidden under his shirt and when Scott's friend, Greene, attempted to intercede, defendant Allah came to his companion's assistance by taking out his own gun and shooting Greene in the back, whereupon defendant's companion also began shooting. When Scott and Greene attempted to flee, they were pursued by defendant and his companion, with the companion shooting repeatedly at Scott, while defendant followed and caught up with Greene, who had fallen to the ground as a result of his initial wound. As Scott was gunned down by the accomplice, defendant placed his gun to Greene's head, robbed him of his money, shot him again, and finally pistol-whipped him. Greene survived and testified at the trial.

We find that these facts constituted sufficient evidence to sustain the jury's finding that defendant shared his companion's intent to kill Scott. The defendant and his companion were both armed and both engaged in a heated dispute with Scott over his differences with their shared religious beliefs. Defendant intentionally aided his companion by intercepting and shooting Greene, when the latter attempted to intercede and prevent the companion from shooting Scott. Upon the victims' attempt to flee, defendant joined with his companion in chasing after them. Scott's death was the result of a rapidly

escalating chain of events arising from the initial confrontation, in which defendant participated from the outset, and in which he continued to participate after his companion's intentions became clear. *(People v Bosque,* 78 AD2d 986, *cert denied* 451 US 992.)*

The facts in the instant case are clearly distinguishable from those in the cases relied upon by the trial court in setting aside the verdict. Unlike those cases, the prosecution here proved far more than defendant's mere presence at the scene when his companion effected the killing. Here there was proof that defendant was armed when he joined the argument, that he participated in the initial heated confrontation and that he facilitated his partner's deadly attack on Scott by, in the first instance, shooting Greene to deflect his intervention on Scott's behalf when defendant's partner pulled his gun and by, thereafter, in concert with his unapprehended partner, pursuing Greene and Scott. Defendant's intent to participate in the homicide is the only inference that may fairly be drawn from this circumstantial evidence, and the jury's conviction should be reinstated. *(See, People v Whatley,* 69 NY2d 784.)

We have examined the points raised by the defendant on his appeal from the judgment of conviction and find them without merit. Concur—Sandler, J. P., Ross, Rosenberger and Ellerin, JJ.

Smith, J., dissents only with respect to the order entered January 16, 1985, which set aside the jury verdict finding defendant guilty of murder in the second degree in a memorandum as follows: I agree with the majority that the evidence is sufficient to convict the defendant of the attempted murder and robbery of Edward Greene and of possession of a weapon. The evidence does not show an intent by defendant to kill Larry Scott or to aid the unknown gunman in killing Larry Scott. I would, therefore, affirm the order of the trial court which set aside that part of the jury's verdict of guilty.

The most complete testimony of what happened came from Edward Greene who was a friend of the deceased and who was shot by the defendant. His testimony was as follows. Between 2:00 and 2:30 A.M. on June 19, 1982, Greene came to the area of 164th Street and Washington Avenue. His friend, Larry Scott, was arguing with three other people. Only one of the three was doing most of the talking with Scott. At first, the defendant was leaning against a church, but he moved during the course of the argument. The defendant "said something that made me [Greene] tell him to mind his business or you

know me and him might end up fighting." Scott asked the unknown gunman if he wanted to fight and started to remove his jacket. The unknown gunman started to remove a pistol from the area of his waist and Greene, who was standing about a foot away, tried to stop him. Greene was then shot in the lower back by the defendant. The deceased, Larry Scott, began to run and the unknown gunman ran after him. Greene, who did not then realize he was wounded, ran about 50 feet before he fell to the sidewalk. Greene then saw the unknown gunman shoot Larry Scott.

Contrary to the statement in the majority opinion, the defendant did not run after Scott and the unknown gunman. In fact, Greene testified that for a short while, he did not see the defendant. Greene stated: "The other guy who shot me, after he shot me, he disappeared. I didn't even see him. You know, I turned around. He was there. Then, I turned around, he was gone." The defendant reappeared, put a gun to Greene's ear, robbed him of money and shot him.

Two other witnesses who saw at least a part of the events, Samuel Valle and Elvis Rodriguez, did not testify to any different actions on the part of the defendant.

Penal Law § 20.00 defines criminal liability for the conduct of another in the following way: "When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct."

During the argument, there was nothing to suggest that guns were present until Larry Scott began to take off his jacket and the unknown gunman began to pull a pistol from his waist. Defendant's action was to shoot Greene when he tried to stop the unknown gunman from pulling a gun. It is an impermissible leap to conclude that the defendant intended to kill Scott or to aid the unknown gunman in killing him.

This case is distinguishable from *People v Whatley* (69 NY2d 784), which is cited by the majority in support of its decision. The shooter in *Whatley* was not identified. Here the shooter of Scott was identified. In *Whatley,* the defendant was convicted of murder in the second degree. The defendant had sought out the deceased at a social gathering and had induced him to leave in order to resolve a dispute involving deceased's cousin. The defendant and the deceased left the gathering with two women and drove the two women home. Then the defendant,

the deceased, and a third man who was in the car drove to the area of 166th Street and Washington Avenue in The Bronx where an argument ensued and the deceased was killed with a shotgun. Defendant asserted that he was present but did not shoot the deceased or know that the third man would shoot him. The jury verdict of guilty was upheld on the basis of circumstantial evidence, including the facts that the defendant induced the deceased to leave the social gathering and knew that the shotgun was present in his car since it was too large to hide.

I conclude that the evidence here is insufficient to convict the defendant of killing Scott.